(84 Misc. Rep. 421)

### HART v. WALSH et al.

(Supreme Court, Appellate Term, First Department. March 5, 1914.)

1. CONTRACTS (§ 99*)—ACTIONS—SUFFICIENCY OF EVIDENCE—FRAUD.

In an action for breach of a contract by which defendants were to pay plaintiff a royalty in consideration of plaintiff's not suing to enjoin defendants from producing a play, evidence *held* not to sustain a finding that defendants were induced to make the contract by plaintiff's fraudulent claim that he owned the copyright to certain plays.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 448–453, 1197–1199, 1799, 1800; Dec. Dig. § 99.*]

2. CONTRACTS (§ 95*)—DURESS—THREATENED SUIT.

If plaintiff, believing that his property rights in certain plays were being infringed by a play produced by defendants, threatened to enjoin defendants' production of their play unless they paid him a royalty, defendants' contract to pay plaintiff a royalty if he did not sue them was not invalid for duress.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 431–440; Dec. Dig. § 95.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CONTRACTS (§ 94*)—FRAUD.

  If a contract by defendants to pay plaintiff a royalty on a play pro-
  duced by defendants, if plaintiff would not sue defendants for infringing
  plaintiff's rights in certain other plays, was valid when made, the fact
  that plaintiff afterwards made a statement to defendants calculated to
  convey the false impression that he had a copyright on the plays in which
  he was interested would not affect the validity of the contract.

  [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160,
  1164, 1165; Dec. Dig. § 94.*]

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Thomas Riego Hart against Blanche Walsh and another. From a judgment for defendants, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Argued February term, 1914, before SEABURY, GUY, and DELANY, JJ.

Appell & Taylor, of New York City (George H. Taylor, Jr., of New York City, of counsel), for appellant.

Henry L. Slobodin, of New York City, for respondents.

SEABURY, J. The complaint alleges that the plaintiff is the owner of the rights to the English translations of the plays known as "Fedora" and "La Tosca," the "situations" from which plays are alleged to be incorporated in a play called "The Countess Nadine," which has been produced by the defendants; that the plaintiff and the defendants entered into an agreement wherein and whereby it was provided that, if the plaintiff would refrain from bringing actions for damages or for an injunction against the defendants by reason of the acts of the said defendants in presenting such "situations" in "The Countess Nadine," the defendants would pay to the plaintiff a royalty of $20 per week; and that under such agreement royalties for eight weeks have accrued and have not been paid by the defendants; wherefore plaintiff demands judgment in the sum of $160. The learned court below found that there was no contract between the plaintiff and the defendants, and that if there was such a contract it was induced by fraud and duress on the part of the plaintiff, and rendered judgment in favor of the defendants.

That part of the opinion of the learned court below which deals with the question whether the "situations" portrayed in "The Countess Nadine" violate the right of literary property which the plaintiff claimed to own by reason of his proprietorship of the plays known as "Fedora" and "La Tosca" does not in our judgment relate to any issue of law or fact raised by the pleadings in this action.

The record presents but two questions for determination: First, was a contract entered into between the plaintiff and the defendants; and, second, if so, was such contract induced by fraud or duress on the part of the plaintiff? If the evidence requires that the first question should be answered in the affirmative and the second question in the negative, it follows that the plaintiff is entitled to judgment.

It does not seem to us that the question whether the play produced

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the defendants, "The Countess Nadine," involved "situations" similar to those presented in "Fedora" and in "La Tosca" is in any way involved upon this appeal. It appears from the record, without dispute, that Fannie Davenport McDowell made certain English translations of the last-mentioned plays, and that she exercised rights of ownership in said plays, which rights were generally recognized throughout the dramatic and theatrical world in the United States and Canada; that she died in September, 1898; and that her executors sold to the plaintiff the manuscripts of said translations and the exclusive right to produce said plays.

Whether the plaintiff's claim to the exclusive ownership of said plays is meritorious, we cannot determine in this action. That he claimed to be the exclusive owner of such plays by virtue of the sale made to him by the executors of the estate of Fannie Davenport McDowell conclusively appears, as also does the fact that he claimed that his right of literary property in said plays was violated by the play produced by the defendants known as "The Countess Nadine."

The uncontradicted evidence shows that the defendants, in consideration of the plaintiff's promise to refrain from suing upon his claim, agreed to pay him $20 per week as a royalty during the time that "The Countess Nadine" was produced. The defendant Walsh signed a written contract to this effect on September 17, 1913, and on September 18, 1913, the defendant Golden wrote the plaintiff a letter in which he said:

"At our interview Monday evening Miss Walsh and I agreed to pay you the sum of twenty ($20) dollars per week."

This letter and the written agreement signed by Miss Walsh leave no room for doubt that the defendants made the agreement upon which the plaintiff declares.

The respondents claim, and the learned court below found, that the contract, if made, was induced by false representations. The representation which the plaintiff is alleged falsely to have made is that he had a copyright of the plays "Fedora" and "La Tosca." The difficulty with sustaining the claim of the respondents is that there is no evidence that the plaintiff made such a claim before the contract was entered into. The defendants could not testify whether the plaintiff said that he owned the rights to these plays, or whether he said he owned the copyright to them; and the defendants testified that they were not induced, by such representation, to enter into the contract. It is true that several days after the contract was made the plaintiff did send a threatening letter to the defendant Walsh, which inclosed a copy of the section of the United States Revised Statutes which declared that the publication, without the consent of the owner, of a literary production which had been copyrighted, rendered the person publishing the same guilty of a misdemeanor and liable to a year's imprisonment. Whatever may be said as to the impropriety of sending such a letter, the statement contained in that letter cannot by any process of reasoning be held to have induced the making of a contract which was entered into several days before the letter was written or received by the defendants.

If we examine the evidence upon which the defendants predicate the claim that the plaintiff stated, before the contract was made, that he had a copyright for the Sardou plays, we shall see that the claim is without foundation.   Miss Walsh was asked, "What did Mr. Hart tell you?" and she answered:

"He told me that he was the owner of the Sardou pieces or rights to them, or the copyright—whichever is the phrase used.  *  *  *  I do not know whether he said right or copy, but he is the owner of the Sardou pieces; probably that is the way he put it.  *  *  *  He told me he owned the rights to Sardou plays 'Fedora' and 'La Tosca.'  That I never questioned.

"Q. Didn't you know that Miss Davenport had been playing the Sardou plays?  A. Certainly.

"Q. Didn't you know that she had exclusive rights in playing such plays in America?  A. Yes, sir.  *  *  *  I know Mr. Hart has a right to the Sardou plays.  *  *  *  I believed, and I believe that Mr. Hart has; whether it is a right or a copyright, I don't know what it is.  However, he has got something to do with the Sardou plays.

"Q. Has that influenced you in agreeing to pay him $20 a week?  A. It has not.  The only thing that influenced me was that he told me he would go to the managers and stop my booking."

The defendant Golden testified on this subject as follows:

"I am sure that he (Hart) claimed to have a copyright or translations of those plays."

[1] This evidence is insufficient to sustain the claim that the defendants were induced to enter into the contract by reason of Hart's fraudulent claim that he had a copyright to the Sardou plays.

[2] There remains to be considered only the claim of the respondents that the contract was entered into as a result of duress.  The most that can be claimed from the proof is that the plaintiff made a claim that the defendants disputed, and that, rather than have the claim tested in the courts while "The Countess Nadine" was being produced, they agreed to pay the plaintiff a royalty of $20 per week.  The fact that the defendants made the agreement to avoid injunction proceedings does not establish duress.  Dunham v. Griswold, 100 N. Y. 224, 3 N. E. 76.  A mere threat to sue or to apply to the courts for an injunction is not duress.

"It is not sufficient in such cases to satisfy the trial court that the threats were uttered; but it must also be shown that they constrained the will of the promisor and induced the promise."  Dunham v. Griswold, supra.

It is impossible to hold upon the proof before us that the claim of the plaintiff and his threat to sue thereon was such a threat, coercion, compulsion, or undue influence as to take away the volition of the defendants and therefore constitute duress.

The plaintiff, believing that the rights which he had purchased were being infringed, had the right to threaten to bring suit in the courts to establish that claim.  When the plaintiff made this claim, the defendants had the right either to resist his claim and any legal proceedings which he might base upon that claim, or they had the right to buy their peace.  They adopted the latter alternative, made the agreement upon which the plaintiff sues, and failed to pay the amount which they agreed to pay.

[3] Upon these facts the plaintiff could not be turned out of court because after the contract was entered into he made a statement calculated to convey the false impression that he had a copyright for the plays which he claimed to own.

It follows that the judgment must be reversed, and, as the facts are undisputed, judgment is awarded the plaintiff for the amount claimed, with costs in the court below and upon appeal. All concur.